BARBARA ANN ELLIOTT, (Plaintiff) Appellant, v. HERMAN E. JOHNS-
TON, (Defendant) Respondent. CLIFFORD ELLIOTT, (Plaintiff)
Appellant, v. HERMAN E. JOHNSTON, (Defendant) Respondent.
CLIFFORD ELLIOTT and BARBARA ANN ELLIOTT, (Plaintiffs) Ap-
pellants, v. HERMAN E. JOHNSTON, (Defendant) Respondent.
CLIFFORD ELLIOTT and BARBARA ANN ELLIOTT, (Plaintiffs) Ap-
pellants, v. HERMAN E. JOHNSTON (Defendant) Respondent.
MARY ANN ELLIOTT, by her parents and natural guardians
CLIFFORD ELLIOTT and BARBARA ANN ELLIOTT, (Plaintiff) Ap-
pellant, v. HERMAN E. JOHNSTON, (Defendant) Respondent.
RUBY MAE ELLIOTT, by her parents and natural guardians
CLIFFORD ELLIOTT and BARBARA ANN ELLIOTT, (Plaintiff) Ap-
pellant, v. HERMAN E. JOHNSTON, (Defendant) Respondent, Nos.
44866, 44867, 44871, 44870, 44869, 44868—292 S. W. (2d) 589.

Division Two, April 9, 1956.

882

*Pete Farabi* and *Edward U. Sweeney* for appellant.

*Ewing, Ewing & Ewing* and *Boyd Ewing* for respondent.

[590] BARRETT, C.—The Circuit Court of Vernon County refused to accept jurisdiction of these six actions for damages for personal injuries and loss of services, resulting from a collision of automobiles, and, upon separate motions to quash service, entered judgments dismissing the actions. The questions for determination upon this consolidated appeal are whether, in the unique circumstances of these records, the plaintiffs, citizens and residents of Kansas, are entitled as a matter of right to prosecute the actions in Missouri against the defendant, also a citizen and resident of Kansas, and whether the court abused its discretion in dismissing the actions.

The plaintiffs are Clifford and Barbara Elliott, of Mulberry, Crawford County, Kansas, and their daughters, Ruby Mae and [591] Mary Ann, fifteen and eleven years of age. The defendant, Herman E. Johnston, is a resident of Fort Scott, Bourbon County, Kansas. On February 11, 1953, according to the allegations of the petitions, Mr. Elliott, with his wife and daughters as passengers, was driving his 1951 Chevrolet sedan in a southerly direction on U. S. Highway 69, about six miles north of Arma, in Crawford County, Kansas, when it was involved in a collision with a 1947 Cadillac sedan driven by Herman E. Johnston. It is alleged in the petitions that Johnston was negligent in that he was driving his automobile on the wrong side of the highway, failed to yield the right of way, failed to maintain a vigilant lookout, was driving at a high and reckless speed, and attempted to pass another vehicle in a "no-passing" zone. It is charged that Johnston's conduct was wilful and wanton and in the six actions actual and punitive damages are claimed in the sums of $121,500 and $40,000 respectively. The husband's action is in three counts, the first praying actual and punitive damages for his personal injuries in the total sum of $50,000, the second for the loss of his wife's services for which he asks $10,000 and the third, $1400 for the destruction of his automobile and $100 for the loss of its use. The wife's action seeks the recovery of $50,000 actual and punitive damages for her personal injuries. Each of the daughters, by their parents as natural guardians, pray for $20,000 actual and punitive damages for their personal injuries and there are two suits by the husband and wife each asking $5000 damages for the loss of their daughters' services and for their medical expense.

In each of the actions timely motions to quash the service were filed and, after a full hearing upon the motions, the Circuit Court of Vernon County made a detailed finding of fact and "of its own motion" refused to accept jurisdiction of the six actions and entered judgments of dismissal. Thus, for the first time in Missouri, the question is presented whether, in the absence of specific statutory authorization, the rather recent "doctrine of forum non conveniens" is applicable to this transitory nonstatutory tort action and, if so, whether the court abused its discretion in refusing to accept jurisdic-

tion. The rule or doctrine of forum non conveniens, as applied to strictly domestic actions, has had its recent widespread genesis in this country in the following law review articles and annotated reports: annotation 32 A. L. R. 6; 29 Col. L. R. 1 (1929); 44 Har. L. R. 41 (1931); 35 Cal. L. R. 380 (1947) and are all collected in the footnotes to Gulf Oil Corporation v. Gilbert, 330 U. S. 501, 67 S. Ct. 839, 91 L. ed. 1055. The comparatively recent development of the doctrine as now understood and applied in actions of the type involved here is noted because there have been several Missouri cases which involved the doctrine but the fact was not recognized or fully appreciated and the cases were not plainly disposed of upon the applicability or non-applicability of the rule. In those cases the court spoke of "comity" and, for the most part, was concerned with fraud in the procurement of the service of process or fraud in foisting jurisdiction upon the court and, as will be noted, there were other distinguishing factors, but the court did not consciously apply the doctrine of forum non conveniens. The leading cases are Newlin v. St. Louis & S. F. R. Co., (1909) 222 Mo. 375, 121 S. W. 125; Lessenden v. Missouri Pac. Ry. Co., (1911) 238 Mo. 247, 142 S. W. 332; State ex rel. Pacific Mutual Life Ins. Co. v. Grimm, (1912) 239 Mo. 135, 143 S. W. 483; Gold Issue Mining & Milling Co. v. Pennsylvania Fire Ins. Co., (1916) 267 Mo. 524, 184 S. W. 999, and Bright v. Wheelock, (1929) 323 Mo. 840, 20 S. W. (2) 684. The first time the phrase or maxim was consciously applied in Missouri was in State ex rel. Southern Railway Co. v. Mayfield, (1949) 359 Mo. 827, 224 S. W. (2) 105, and that case arose under the Federal Employers' Liability Act and except for its applicable analogies and certain constitutional implications suggested by the Supreme Court of the United States, is now distinguishable as a matter [592] of principle from this transitory nonstatutory tort action. Missouri v. Mayfield, 340 U. S. 1, 71 S. Ct. 1, 95 L. ed. 3, and, finally, State ex rel. Southern Railway Co. v. Mayfield, (1951) 362 Mo. 101, 240 S. W. (2) 106.

These actions were instituted and service of process was had upon the defendant, Johnston, in Vernon County, Missouri, in these circumstances: About three months after the collision and injuries Mr. Pete Farabi, an attorney with offices in Pittsburg, Crawford County, Kansas, notified, by telephone and letter, another firm of lawyers in Pittsburg who were representing a liability insurance company and under the terms of the policy Mr. Johnston, that he had been employed to represent the Elliotts in their claims for damages and that any future negotiations were to be conducted through him and that they "were not to go out and talk with his clients." Some weeks later and ten or twelve days before the suits were filed Mr. Farabi made a trip to Fort Scott and called on Mr. Johnston at his home. He says that he did not take a statement from Mr. Johnston or discuss the merits of his cases with him, but he told him that he had the cases and was

going to sue him but that he "would rather sue him in Missouri than in Bourbon County, Kansas but didn't tell him the reason." He said, "I just told him I represented the plaintiffs and I was going to sue him and just asked him if he ever had occasion to go to Missouri and he said he did; he said he went over there occasionally; I said I could sue you here but I would like to sue you over there and he said I go over there once in a while to Missouri." Johnston testified that on the occasion of Mr. Farabi's visit he said, "Yes, he asked me if I would like to be tried in Missouri and I told him I didn't care; in fact I'd rather be tried there because I just didn't want to be tried in Fort Scott or Pittsburg." Mr. Farabi did not talk to Johnston again but he "had a fellow who had been keeping check on this boy as to his whereabouts, where he was going," and on the day the suits were filed his informant telephoned that Mr. Johnston was going to Nevada, Missouri, on that date. Mr. Farabi had already prepared his petitions, leaving the name of the county blank, and upon receiving the telephone call, drove to Nevada and filed the six suits. He waited while the clerk prepared the petitions and summonses and took them to the sheriff. He accompanied the sheriff to the Thomas Pharmacy, a block or so from the court house, and there pointed out Mr. Johnston as the man to be served. The sheriff served the petitions and summonses on Johnston and, accordingly, made his return of personal service in Vernon County, Missouri.

The court found, as urged in the motions to quash, that there was fraud in the procurement of service of process. But, laying to one side for the time being whether there was improper collusion between Mr. Farabi and Johnston, there was no fraud in its true meaning in the filing of the suits in Vernon County and the procurement of the service of process. See, for example, Bowman v. Neblett, (Mo. App.) 24 S. W. (2) 697. The defendant, Johnston, may have voluntarily appeared in Vernon County to be served but he did not enter his "voluntary appearance" to the suits under V.A.M.S., Sec. 506.110. The plaintiffs had existing claims against Johnston "under the law of another state" and could therefore institute their actions in Missouri, providing they were able to obtain service of process upon the defendant. V.A.M.S., Sec. 507.020. The action was transitory, the defendant, Johnston, was a nonresident of Missouri and, therefore, the venue of the actions was "in any county in this state" in which he could be found and served with process. V.A.M.S., Sec. 508.010. It has been said that Section 507.020, providing for actions in Missouri upon claims existing by reason of the law of another state, is a legislative declaration of comity (Newlin v. St. Louis & S. F. R. Co., supra), and that "It is not a fraud to do what the law permits," that is, institute an action meeting the requirements [593] of these statutes. Lessenden v. Missouri Pac. Ry. Co., 238 Mo., l.c. 259, 142 S. W., l.c. 335. So, there was appropriate venue

886

and personal service of process and the Circuit Court of Vernon County had jurisdiction of the parties and the subject matter and consequently of the actions (State ex rel. Pacific Mut. Life Ins. Co. v. Grimm, supra; Gold Issue Mining & Milling Co. v. Pennsylvania Fire Ins. Co., supra), but it does not follow that the doctrine of forum non conveniens may not apply, as some of these Missouri cases may indicate. "Indeed, the doctrine of forum non conveniens can never apply if there is absence of jurisdiction or mistake of venue. * * * In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; *the doctrine furnishes criteria for choice between them. The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.*" Gulf Oil Corp. v. Gilbert, 330 U. S., l.c. 504, 506-507, 67 S. Ct., l.c. 841, 842, 91 L. ed., l.c. 1060, 1061-1062.

So, in these cases, the questions are what are the appropriate factors and criteria to be considered in determining whether the ends of justice require a trial of these actions in Missouri or in what the court deemed a more appropriate forum. Koster v. Lumbermens Mutual Cas. Co., 330 U. S. 518, 527, 67 S. Ct. 828, 833, 91 L. ed. 1067, 1077. As indicated, the plaintiffs had the right, as a matter of comity, to institute these actions in Vernon County, Missouri, but comity is a courtesy, the granting of a privilege (Newlin v. St. Louis & S. F. R. Co., supra) and their right is not one of the absolutes of the law so as to compel retention of jurisdiction and the trial of the causes in Missouri. 14 Am. Jur., Sec. 182. The parties are all nonresidents, the actions or claims are upon a foreign transitory nonstatutory tort and the court had the inherent discretionary power to retain or to decline jurisdiction of these actions transplanted from their "natural forum", and the meritorious question is whether in the particular circumstances the forum is inappropriate and whether the court abused its discretion. Annotation 32 A. L. R., l.c. 33-40; 35 Cal. L. R., l.c. 386, 402; 44 Har. L. R 41; Gulf Oil Corp v. Gilbert, supra; Burt v. Isthmus Development Co., 218 F. (2) 353, 356.

The basic factors in these cases are that the claims or actions arose in Kansas and both the plaintiffs and the defendant are citizens and residents of Kansas and another court has jurisdiction of the parties and the actions and the plaintiffs are not without a remedy. 14 Am. Jur., Sec. 182; 29 Col. L. R., l.c. 32-33. In these particular cases the basic consideration is the public factor of convenience to the court and for that reason emphasis is fairly placed upon residence and the place where the causes of action accrued. 35 Cal. L. R., l.c. 410; Gulf Oil Corp. v. Gilbert, supra. It does not appear, in selecting a forum, that Mr. Farabi ever consulted his clients as to the advisability or feasibility of filing the suits in Missouri or that their desires

or preferences were considered. They did not testify upon the motions and so far as the record is concerned their lawyer, for reasons of his own, selected the forum. Mr. Farabi said that the reason he did not want to file the suits in Bourbon County, Kansas, where Johnston resided was, "Because of some unhappy experiences I have had in Bourbon County is all." But a traditionally inquisitive clerk said, "* * * most generally I kinda glance over them to see who they are from and stuff like that and I seen that they was from Kansas so I asked him about why he had filed them over in Missouri, if he liked our courts better over here." Mr. Farabi replied, " 'Yes.' He said he liked the nine-man verdict better than he did the twelve over in Kansas." While the latter reason for filing suits in Missouri is not novel and may not be a significant factor in applying the doctrine of forum non conveniens (Lessenden v. Missouri [594] Pac. Ry. Co., supra), it is a fair inference from Mr. Farabi's testimony and the record, aside from any supposed advantages in procedure, that he may have been influenced in his choice of a forum by "the reputed largesse" of Missouri juries as compared with Kansas juries. Collins v. American Automobile Ins. Co., 128 F. Supp. 228, 229.

Mr. Johnston said that he could see what Mr. Farabi had in mind and that he "wanted to be tried in Missouri—well, for different reasons." He said to the court, "I'll tell you the truth about it. I work in a club over there—I work in the V.F.W. Club over there and I didn't want to be tried in Fort Scott so I thought it would be easier for me to come over here. * * * It was because I didn't want to be tried in Kansas in my home town." It appears, at least inferentially, that Johnston had had some previous experiences with Kansas courts and as Mr. Farabi said of this particular incident, "this man was arrested for negligent driving and paid a fine."

In this connection it should be noted that Mr. Johnston, likewise, did not consult the lawyers representing the liability insurance company and thereby him as to the advisability of Kansas or Missouri as appropriate forums for the trial of these actions. The suits are for sums far in excess of the insurance coverage and Johnston was not represented by a lawyer of his own choosing. While these motions were filed on behalf of Johnston, the lawyers appeared in the Missouri courts under a reservation of rights agreement and, upon oral argument, stated that insurance company had filed a suit for a declaratory judgment in a United States District Court in Kansas questioning, by reason of his conduct, whether there was any obligation under the policy to defend and represent him at all. These facts are noted because they indicate that the real parties in interest, the contestants (Koster v. Lumbermens Mutual Cas. Co., supra), in so far as the immediate problems are concerned, are not the individual plaintiffs, but their counsel and the defendant on one side and the insurance carrier and their counsel on the other side. These circum-

888

stances also point up the fact, previously indicated, that the basic consideration here is the public factor of convenience to the court.

It is a fair inference from the record that Mr. Farabi and Johnston understood one another and that there was some tacit understanding, if not collusion. In its findings, the court said, "If these cases were tried it would require at least twelve days of trial work, all at the additional expense of the taxpayers of Vernon County. These cases accrued in Kansas—the plaintiff(s), the defendant and all the witnesses reside in Kansas. Should the taxpayers and the Courts of Missouri be burdened with nonresident lawsuits just because our procedure is different from other states? This court does not think so. Our Missouri dockets and that of Vernon County are already overloaded with cases ready for trial."

While the courts of Kansas and Missouri have long since become inured to the unrewarding task of enforcing and predicting one another's laws (Lessenden v. Missouri Pac. Ry. Co., supra), it was proper for the court, in exercising its discretion, to consider the enumerated factors even though, standing alone, they may not be conclusive. Annotation 32 A. L. R., l.c. 44; 29 Col. L. R., l.c. 20-27; Gulf Oil Corp. v. Gilbert, supra. When these records are carefully examined and the conveniences balanced, it is obvious that these cases have but little, if any, "nexus" with Missouri and its courts. 29 Col. L. R., l.c. 18. In transplanting this litigation from its "natural forum" plaintiffs' counsel neither points to nor claims any inconvenience or injustice to his clients in jurisdiction's being declined. Koster v. Lumbermens Mutual Cas. Co., supra. His only reasons, apparently, are personal and in the hope of securing some real or fanciful tactical advantage. Annotation 32 A. L. R., l.c. 26. The trial court appropriately [595] applied the doctrine of forum non conveniens and, all the circumstances considered, it may not be said that the court abused its discretion in dismissing the actions.

There is no absolute compulsion in the privileges and immunities clause of the Constitution of the United States (Art. IV, Sec. 2) upon the courts of Missouri to accept jurisdiction of foreign transitory nonstatutory tort actions (Missouri v. Mayfield, supra), the restrictions and limitations, it is believed, are upon "unreasonable discriminations." 35 Cal. L. R. l.c. 392; Canadian Northern R. Co. v. Eggen, 252 U. S. 553, 40 S. Ct. 402, 64 L. ed. 713; Douglas v. New York, N. H. & H. R. Co., 279 U. S. 377, 49 S. Ct. 355, 73 L. ed. 747. An arbitrary denial to a citizen of another state of the right to maintain an action in Missouri would not be permitted, but in the circumstances of these cases a distinction or denial based in part not upon citizenship but upon residence has some basis and validity and is not wholly unreasonable. Annotation 32 A. L. R., l.c. 13, 25; 17 Har. L. R. 1. In this connection there is another factor which was not taken into consideration in either the Mayfield, Lessenden,

Gold Issue Mining & Milling Company and State ex rel. Pacific Mutual Life Insurance Company cases. As stated, the doctrine of forum non conveniens in its present full import was not consciously applied in those cases, and, in addition, there was present one significant factor which gave all of those cases some nexus with Missouri and its courts. In the Lessenden case the railroad was a Missouri corporation operating a railroad in Missouri and in Jackson County where the action was instituted. In the Mayfield case, as well as in Bright v. Wheelock, 323 Mo. 840, 20 S. W. (2) 684, the railroads either operated lines in Missouri or had appointed service agents in Missouri, in the Bright case in St. Louis, and so if they were not in point of fact citizens and residents of Missouri, they were residents for the purpose of suit. In the Gold Issue and Pacific Mutual Life Insurance Company cases the defendants were insurance companies who, by reason of transacting business in Missouri or by reason of compliance with Missouri's Insurance Code, had authorized service of process upon the superintendent of insurance and, again, were residents of Missouri for some purposes. But ultimately, it is not believed that the application of the doctrine of forum non conveniens and the dismissal, in the particular circumstances, of these actions results in such arbitrary discrimination or manifest injustice to these parties as to infringe any "fundamental rights" they may have under either the Missouri Constitution or the Constitution of the United States. Gulf Oil Corp. v. Gilbert, supra; Mayfield v. Missouri, supra; annotation 32 A. L. R. 6.

Accordingly the judgments of dismissal are affirmed. *Bohling* and *Stockard, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.